IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KUPER INDUSTRIES, LLC and JAMES W. KUPER d/b/a THE PANCAKE MAN, | 8:15-CV-42 |
| Plaintiffs, | MEMORANDUM AND ORDER |
| vs. | |
| DANIEL REID; DANIEL REID d/b/a THE PANCAKE GUYS; ALL THE MARBLES, LLC d/b/a THE PANCAKE GUYS, | |
| Defendants. | |

This matter is before the Court on the Motion for a Temporary Restraining Order filed by plaintiffs Kuper Industries, LLC and James W. Kuper, d/b/a The Pancake Man. Filing 2. For the reasons discussed below, the Court will grant plaintiffs' motion.

I. FACTUAL BACKGROUND

Since 1985, plaintiff James W. Kuper has done business in Nebraska, Iowa, and other Midwestern states under the name "The Pancake Man," serving pancakes at school fundraisers, clubs, and for various businesses. Filing 4-1 at ¶ 2. Kuper also operates his business through plaintiff Kuper Industries, LLC. Filing 4-1 at ¶ 1. Kuper avers that in his nearly 30 years of business, he has served "millions" of pancakes on thousands of occasions, and that members of the public regularly recognize him as The Pancake Man. Filing 4-1 at ¶¶ 5–7. Kuper has also received national recognition, with articles appearing in the Wall Street Journal and an appearance on a Food Network television show, as well as in local publications such as the Omaha World-Herald. *See*, *e.g.*, filing 4-1 at ¶¶ 8–16; filings 4-2, 4-3, 4-4, 4-5, and 4-6.

In September 2009, Kuper was issued a service mark for The Pancake Man. Filing 1 at 8; filing 4-1 at ¶ 3. The mark is registered on the United States Patent and Trademark Office's Principal Register and consists of standard characters, without claim to any particular font, style, size, or color. Filing 1 at 8.

Defendant Daniel Reid operates an Omaha pizza business known as The Pizza Pie Guys. *See* filing 4-1 at ¶¶ 17–18; filing 4-7. Around 2011 or 2012, Reid became interested in expanding into the pancake business. At that time, Reid contacted Kuper to see if he would be willing to sell his business. Filing 4-1 at ¶ 17. Later, in the summer of 2013, Reid again emailed Kuper to see if he was interested in selling his business. Filing 4-7. Kuper avers that when he eventually told Reid he was not interested in selling his business, Reid "became somewhat upset" with him. Filing 4-1 at ¶ 19.

Since then, Kuper has learned that Reid, and Reid's business, defendant All The Marbles, LLC, have begun operating a competing pancake performance enterprise known as "The Pancake Guys." The businesses are apparently competing for similar customers. Kuper avers that in February 2014, he learned that "The Pancake Guys" were soliciting Kuper's customers to breach their contracts with him by offering to pay their cancellation fees. Filing 1 at ¶ 4; filing 4-1 at ¶¶ 18–34; filing 4-13.[1] Kuper's attorney contacted Reid and urged him to stop, claiming that this amounted to tortious interference with Kuper's business relationships. Reid apparently agreed to remove the posting. Filing 4-1 at ¶ 22; filing 4-13.

In December 2014, Kuper learned that an elementary school in Papillion, Nebraska, was advertising on its website that the Pancake Man would be making an appearance at the school on December 4. This was surprising, because although Kuper had worked there in the past, he was not scheduled to make a new appearance. Kuper contacted the school and learned that, in fact, the Pancake Guys were scheduled to perform. On December 3, the school agreed to correct its website. Filing 4-1 at ¶¶ 27–31.

Since then, Kuper has also learned that Walt Disney Elementary School, in Omaha, Nebraska, has advertised on its website that The Pancake Man would be appearing at a school event set for January 30, 2015. Once again, however, it was the Pancake Guys who were actually scheduled to appear. Kuper avers that school only recently corrected its website. Filing 4-1 at ¶¶ 32–34. The present suit followed.

## II. ANALYSIS

Plaintiffs claim that defendants' conduct constitutes (1) trademark infringement and (2) unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a); (3) trademark dilution by blurring in violation

---

[1] Kuper has submitted what he claims is a print-out of a post from The Pancake Guys' Facebook page, making such an offer, but the exhibit has not been properly authenticated. Filing 4-13 at 4.

of the Lanham Act, 15 U.S.C. § 1125(c); and (4) a violation of Nebraska's Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301 *et seq*. Filing 1 at 3–5.

Plaintiffs ask the Court to enter a temporary restraining order, enjoining defendants from, among other things, operating under the name "The Pancake Guys." Filing 2. The pending motion focuses on plaintiffs' claims under the Lanham Act. The Court finds that plaintiffs are entitled to temporary injunctive relief under their claims for trademark infringement and unfair competition. So, for the time being, the Court need not consider plaintiffs' other claims, as they would not entitle plaintiffs to any additional relief.[2]

Federal Rule of Civil Procedure 65(b) governs the issuance of temporary restraining orders issued with or without notice to the opposing parties:

> **(1)** *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> > **(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> >
> > **(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

---

[2] The Deceptive Trade Practices Act prohibits a "broad panoply of deceptive trade practices," including, among other things, confusing customers as to the origin of goods or services. *Mutual of Omaha Ins. Co. v. Novak*, 648 F. Supp. 905, 909 (D. Neb. 1986); *see* Neb. Rev. Stat. § 87-302(a)(2) and (3). In other words, the same analysis that applies to plaintiffs' claims of federal trademark infringement and unfair competition will apply to at least a portion of their claims under the Deceptive Trade Practices Act. *See Novak*, 648 F. Supp. at 909; *see Prime Home Care, LLC v. Pathways to Compassion, LLC*, 809 N.W.2d 751, 764 (Neb. 2012).

A claim of trademark dilution, on the other hand, calls for a separate analysis. *See*, 15 U.S.C. § 1125(c); *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 762 (8th Cir. 2005). Plaintiffs have provided some briefing on this claim, but have not significantly addressed the factors set forth in § 1125(c)(2)(A) to determine if a mark is "famous" and in § 1125(c)(2)(B) to determine whether dilution by blurring is likely. The Court will defer ruling on plaintiffs' dilution claim until the matter can be briefed more fully.

Fed. R. Civ. P. 65(b).

When deciding whether to issue a temporary restraining order, the Court turns to the four *Dataphase* factors: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict on the nonmovant and other parties; and (4) the public interest. *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). A temporary restraining order is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Id.*

The Court finds that plaintiffs have satisfied the requirements of Fed. R. Civ. P. 65(b) and are entitled to temporary injunctive relief under the *Dataphase* factors. While defendants have not yet been served with a copy of this motion, plaintiffs' counsel avers that she has spoken with defendants' counsel and alerted him to plaintiffs' motion. *See* filing 4-14. Plaintiffs have also shown a likelihood of success on the merits of their claims for federal trademark infringement and unfair competition, and a threat of irreparable harm in the absence of injunctive relief. The remaining *Dataphase* factors do not weigh against plaintiffs, and they are entitled to temporary injunctive relief.

### A. Likelihood of Success on the Merits

To show a likelihood of success on the merits, the movant need not show that it will ultimately win, or even that the movant is more likely than not to prevail. *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991). On the current record, the Court finds that plaintiffs have demonstrated a likelihood of success on their first two claims.

Likelihood of confusion is the hallmark of any mark infringement claim, and is necessary to prevail on claims for mark infringement under § 1114(1) and unfair competition under § 1125(a). *Minn. Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 n.5 (3d Cir. 2000).[3] To prevail on a claim of mark infringement under 15 U.S.C. §

---

[3] Although this case involves a service mark, the Court cites to trademark cases, as service and trademarks are entitled to the same protection under federal law and the analysis for both is the same. *See Am. Int'l Grp., Inc. v. Am. Int'l Bank.*, 926 F.2d 829, 830 n.1. (9th Cir. 1991); *see also Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 466 F.3d 630, 633 (8th Cir. 2006).

1114(1), plaintiffs must establish that they own a valid, protectable mark and that there is a likelihood of confusion between their mark and the defendants' mark.[4] *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009). Similarly, § 1125(a)(1), which offers protection to marks regardless of federal registration, prohibits the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source or sponsorship of the goods or services. 15 U.S.C. § 1125(a)(1); *see also Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005). In essence, on the present facts, the elements for a claim of infringement and a claim for unfair competition are identical. *See*, *e.g.*, *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2. (9th Cir. 1992).

<u>1. Ownership of a Valid and Protectable Mark</u>

Plaintiffs can likely show that they own the service mark for "The Pancake Man" and that it is valid and protectable—registration of the service mark provides prima facie evidence of each of these elements. 15 U.S.C. §§ 1115(a) and 1057. This "'has a burden-shifting effect, requiring the party challenging a registered mark to produce sufficient evidence to establish that the mark is generic by a preponderance of evidence.'" *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1011 (8th Cir. 2011) (quoting *Retail Servs., Inc. v. Freebies Publishing*, 364 F.3d 535, 542 (4th Cir. 2004)). There being no contrary evidence in the record, plaintiffs have shown a likelihood of success on the first half of their trademark claims.

<u>2. Likelihood of Confusion</u>

For violations of the Lanham Act, the Eighth Circuit employs a six-factor test to evaluate whether there is a likelihood of confusion, including, (i) the strength of the owner's mark; (ii) the similarity between the owner's mark and the alleged infringer's mark; (iii) the degree to which the products compete with each other; (iv) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (v) incidents of actual confusion; and, (vi) the conditions of the purchase of the service and degree of care expected of customers. *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010). No factor standing alone is dispositive. *Id.* Based on

---

[4] The defendants use of the mark must be "in commerce." 25 U.S.C. § 1125(a). The Court predicts no serious dispute of this element: defendants have used "The Pancake Guys" to advertise their competing pancake performance service. *See*, 15 U.S.C. § 1127(2); *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 470 (8th Cir. 2011).

the limited evidence available at this time, the Court finds that plaintiffs have demonstrated a likelihood of confusion.

### *i. The Strength of the Owner's Mark*

A strong and distinctive trademark is entitled to greater protection than a weak or commonplace one. *Id.* Marks may fall into one of four categories: generic, descriptive, suggestive, or arbitrary or fanciful. *Id.* On this spectrum, an arbitrary or fanciful mark is entitled to the highest level of protection, while a generic mark is afforded no trademark protection. *Id.* Which category a mark falls into is question of fact. *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1326 (8th Cir. 1984); *see also Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

The registration of plaintiffs' mark provides prima facie evidence that its mark "is not generic in the eyes of the relevant public, *see* 15 U.S.C. § 1064(3), and that its mark is not 'merely' descriptive, but at a minimum is descriptive *and* has obtained secondary meaning, *see* 15 U.S.C. § 1052(e)." *Am. Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Plaintiffs have not briefed this factor, and the Court will not conduct further analysis to determine the precise classification of their mark. For now, this factor is neutral; at the very least, it does not weigh significantly *against* a likelihood of confusion.

### *ii. Similarity Between Marks*

To assess the similarity of the parties' marks, the Court evaluates the impression that each mark is likely to have on a purchaser exercising the attention usually given by purchasers of such products. *Sensient Techs.*, 613 F.3d at 764. The Court does not compare the component parts of each mark, but the overall impression of each mark as a whole. *Id.* The fact that both marks use identical, or even dominant words in common does not automatically mean that the two marks are similar. *Id.*

The similarity between the marks is apparent: there is a difference of only one word, and the different words ("Man" versus "Guys") are themselves essentially synonymous. Where the services are closely related, less similarity in the trademarks is necessary to support a finding of infringement. *SquirtCo. v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). And as the Court explains in reference to the third factor, the parties' services are very similar.

The Court lacks the information to delve more deeply into the similarity analysis. The registration for plaintiffs' mark states that it consists of standard characters, without claim to any particular font, style, size, or color. Filing 1 at 8. Defendants might be able to show, however, that there

are visual differences between the two marks as they are used. Nonetheless, at this stage, this factor weighs in favor of a finding of confusion.

### iii. The Competitive Proximity of the Parties' Services

If parties' services are closely related, customers are more likely to be confused. *Sensient Techs.*, 613 F.3d at 766. This does not mean the services must be in direct competition to cause confusion. *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 679 (7th Cir. 2001). Rather, the question is whether consumers are likely to believe the goods to be related, *i.e.*, put out by a single producer. *Id.*

The parties' marks are apparently competing in the same market. For example, both seek to cater to schools in the Omaha area. And their products are, as far as the Court can tell, similar: both parties provide pancakes and entertainment for fundraisers and events. This factor weighs in favor of a finding of confusion.

### iv. Bad Intent

Proof of bad intent is not required for success in an infringement or unfair competition claim, but the absence of such intent is a factor to be considered. *Sensient Techs.*, 613 F.3d at 766. Knowledge of another's product and the intent to compete are not equivalent to an intent to mislead and cause confusion. *Id.* Plaintiffs have not produced any significant evidence of bad intent. While there is evidence that two schools advertised defendants' appearance as "The Pancake Man," it is not clear that this was the result of any manipulation by defendants. However, at this early stage, this does not meaningfully detract from plaintiffs' case.

### v. Incidents of Actual Confusion

Showing incidents of actual confusion is an effective means of proving a likelihood of confusion, but plaintiffs are not required to bring forth such incidents to succeed. *Id.* at 768. While the Court is not willing—without something more—to infer defendants' bad intent from the elementary schools' use of plaintiffs' mark, this evidence does suggest that plaintiffs will be able to prove at least some incidents of actual confusion. For now, it tends to show that the schools themselves may have been confused (regardless of any intentional misconduct by defendants).

Plaintiffs have not, at this time, produced evidence of actual confusion among public attendees.[5] But if attendees are told that the Pancake Man is

---

[5] These may not be the parties' "direct" customers, i.e., the schools or businesses that hire them. But the likelihood of confusion made actionable by the Lanham Act includes

going to make an appearance, only to have the Pancake Guys show up, confusion is a likely outcome. While this is not evidence of actual incidents of confusion, this supports the overall gist of plaintiffs' claim: that there is a likelihood of confusion between the parties' marks or a misleading impression that the defendants are somehow affiliated with plaintiffs.

### *vi. The Degree of Care Reasonably Expected of Potential Customers*

To consider this factor, the Court stands in the shoes of the "ordinary purchaser," buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying this class of services. *Id.* at 769. Plaintiffs have not discussed this factor. The parties' direct clients might be expected to exercise some degree of care, since they are planning public events that they hope will go well. The same might not be true for attendees. But evaluation of this factor requires evidence, not speculation by the Court. For now, this factor does not meaningfully affect the Court's analysis.

### *vii. Weighing the Factors*

The parties' marks are quite similar, especially given the similarity of the parties' services and their competitive proximity. Plaintiffs have also shown what are at least two potential incidents of actual confusion by schools. And given their nature, these incidents present a distinct possibility of causing confusion among attendees and the general public. None of the remaining factors weigh significantly against a finding of confusion. So, the Court finds that plaintiffs have shown a likelihood of confusion and hence a likelihood of success on their claims for infringement and unfair competition.

### **B. Irreparable Harm**

Since a service mark represents intangible assets such as reputation and goodwill, irreparable harm can be presumed if the plaintiff has shown a likelihood of consumer confusion. *See, e.g., Devon Park*, 634 F.3d at 1012; *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 624 (8th Cir. 1987). So, the Court finds that plaintiffs have, at this time, also demonstrated a sufficient threat of irreparable harm. Plaintiffs have also demonstrated that this harm is ongoing and immediate: the performance scheduled for the day this Order is being entered.

---

confusion of nonpurchasers as well as direct purchasers. *First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D.*, 679 F.3d 763, 770 (8th Cir. 2012). In any event, such attendees likely represent potential direct customers.

## C. Remaining *Dataphase* Factors -- Balance of Harms and Public Policy

The Court next balances the harm plaintiffs will face if the injunction is not granted with the harm defendants will face if the injunction is improperly granted. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284–85 (4th Cir. 2002). At this point, it is worth clarifying that the Court is not being asked to cancel defendants' upcoming performance. No one should, as a result of this order, be deprived of pancakes. Rather, plaintiffs simply ask that defendants perform under some other, less confusingly similar name.[6]

Undoubtedly, this injunction will cause some interference with defendants' business—they will have to change their name. But their business does not have to stop. Without any specific evidence of harm from defendants, the balance of harms supports plaintiffs' request for injunctive relief.[7] Finally, the Court finds that the public interest is served by the enforcement of valid trademarks and prevention of consumer confusion.

## D. Weighing the *Dataphase* Factors

Plaintiffs have shown both a likelihood of success on the merits and a threat of irreparable harm. The remaining *Dataphase* factors do not alter the balance, and the Court finds that plaintiffs are entitled to a temporary injunction prohibiting defendants from operating under the name "The Pancake Guys," or otherwise using the mark in commerce in a manner prohibited by 15 U.S.C. §§ 1114(1) and 1125(a).

## E. Other Relief Requested by Plaintiffs

Plaintiffs have also asked the Court to enjoin defendants from "encouraging and / or allowing their customers to advertise that "The Pancake Man" will be appearing at events at which Defendants have contracted to appear;" and mentioning "The Pancake Man" in any social media, including but not limited to, Defendants' website, Facebook, etc." Filing 2. The Court will enjoin defendants from "encouraging" their customers to advertise that "The Pancake Man" will be appearing at

---

[6] Part of defendants' business is performance, and so they have to call themselves *something*. The Court believes that the parties should be able to find a mutually acceptable name for defendants to use in their upcoming events, at least for the immediate future.

[7] In a related matter, the Court finds that it is not necessary, at this time, for plaintiffs to post a bond. *See* Fed. R. Civ. P. 65(c). As it stands, the Court lacks the information to determine the appropriate amount for a bond. If a bond is indeed necessary, then the matter can be more effectively resolved once defendants have had an opportunity to respond.

defendants' events, as that falls within the scope of conduct prohibited above, *i.e.*, conduct likely to cause confusion in violation of the Lanham Act.

Plaintiffs are not entitled to the remainder of their requested injunctive relief. The other forms of alleged conduct—allowing customers to make certain statements and mentioning plaintiffs' mark on social media—do not (without something more) constitute violations of plaintiffs' legally protectable interests. As to the first, plaintiffs have not shown that defendants have any ability to control their customers' speech. And as to both, what plaintiffs are requesting would amount to a prior restraint of speech. *See United States v. Kaun*, 827 F.2d 1144, 1150 (7th Cir. 1987). A proponent of prior restraint carries a "heavy burden." *Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 778 (8th Cir. 1994). And in the absence of some showing that such speech would be actionable under the Lanham Act, or is otherwise unlawful, plaintiffs are not entitled to this form of injunctive relief. *Compare Coca-Cola Co. v. Purdy*, 382 F.3d 774, 790 (8th Cir. 2004).

### III. CONCLUSION

Plaintiffs' motion for temporary injunctive relief will be granted in part and denied in part, as discussed above. For the time being, the Court will enjoin defendants from operating under the name "The Pancake Guys" or otherwise engaging in conduct likely to cause consumer confusion between the parties' marks or in a manner likely to cause confusion as to the source or sponsorship of defendants' goods or services.

However, defendants are entitled to an opportunity to respond. Therefore, the parties shall promptly confer and contact the Court to set forth a schedule for briefing any request for ongoing preliminary injunctive relief. This matter may also be set for a hearing, if the parties believe one is necessary.

THEREFORE, IT IS ORDERED:

1. For the duration of this temporary order, defendants, their directors and officers, principals, agents, servants, employees, and all persons or entities under their control or in active concert or participation, are enjoined from:

    a. Operating under the name "The Pancake Guys;" or

    b. otherwise using such mark in commerce in connection with the sale, offering for sale, distribution, or advertising of any goods or services

        on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

    c.    using such mark in a manner likely to cause confusion as to the affiliation, connection, or association of defendants with plaintiffs or "The Pancake Man," or as to the origin, sponsorship, or approval of defendants' goods, services, or commercial activities by plaintiffs.

2.    The parties shall promptly confer and contact the Court to decide upon a schedule for briefing any request by plaintiffs for ongoing preliminary injunctive relief.

Dated this 30th day of January, 2015.

                      BY THE COURT:

                      _____
                      John M. Gerrard
                      United States District Judge