IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KUPER INDUSTRIES, LLC and JAMES W. KUPER d/b/a THE PANCAKE MAN, | 8:15-CV-42 |
| Plaintiffs, | |
| vs. | MEMORANDUM AND ORDER |
| DANIEL REID; DANIEL REID d/b/a THE PANCAKE GUYS; ALL THE MARBLES, LLC d/b/a THE PANCAKE GUYS, | |
| Defendants. | |

This matter is before the Court on the plaintiffs' motion for summary judgment (filing 65). That motion will be denied. Specifically, the Court finds that there are, at the very least, genuine issues of material fact as to whether there is a likelihood of confusion between the plaintiffs' registered service mark of "The Pancake Man" and the defendants' since-changed solicitation of business as "The Pancake Guys."

I. BACKGROUND

The plaintiffs, James W. Kuper and Kuper Industries, LLC, do business in Nebraska and Iowa as "The Pancake Man," cooking pancakes for events at schools, clubs, churches, and local businesses. Filing 67 at 1-2.[1] Kuper has been catering pancakes since 1985. Filing 67 at 2. According to Kuper, people recognize him in public and know him as "The Pancake Man." Filing 67 at 2. Kuper registered the service mark "The Pancake Man" in 2009. Filing 67 at 3.

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1).

The defendants, Daniel Reid and All The Marbles, LLC, began doing business as "The Pizza Pie Guys" in 2008, catering for fundraising events at which guests can make their own pizzas. Filing 68 at 10. In 2013, they began doing business as "The Grill Guys," catering hot dogs and hamburgers. Filing 68 at 10. At some point, Reid contacted Kuper and proposed to purchase the plaintiffs' pancake business. Filing 67 at 4. (The parties dispute the timeline of those discussions, but the disagreement is not material.) Eventually, Kuper declined. Filing 67 at 4. So, in 2013, the defendants began doing business as "The Pancake Guys," catering pancakes, sausage, and orange juice for events and fundraisers. Filing 68 at 11.

By 2014, Kuper found out about "The Pancake Guys." Filing 67 at 4. The advertisement Kuper found included the solicitation, "try us instead of the Pancake Man." Filing 67 at 4. Over the following months, Kuper discovered events that were promoted, in various ways, as featuring a "Pancake Man," but were in fact catered by the defendants. Filing 67 at 6-8; *see also* filing 78-1. But the defendants deny being involved in those promotions, which they suggest were undertaken by customers, not the defendants. *See* filing 68 at 6-7; filing 80 at 3. Instead, the defendants point to evidence that for at least four of those events, the customers had previously hired the plaintiffs and deliberately chose to hire the defendants instead.[2] Filing 4-1 at 5; filing 69-1 at 5; filing 69-3; filing 69-9; filing 69-11. For another event, the defendants have presented evidence that the customer was not aware of the plaintiffs' business or service mark at all. Filing 81-1. And the defendants have presented evidence from some of other customers explaining that those customers had not confused the plaintiffs' and defendants' businesses—rather, they were aware of both, and elected to hire

---

[2] The plaintiffs have objected to much the defendants' evidence opposing summary judgment, on hearsay and foundational grounds. Filing 72 at 1-2. The Court finds no merit to those objections. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). And when such an objection is made, the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated. Fed. R. Civ. P. 56 advisory committee's note. But the standard at the summary judgment stage is not whether the evidence offered would be admissible at trial, "it is whether it *could* be presented at trial in an admissible form." *See,* Fed. R. Civ. P. 56(c)(2); *Gannon Int'l, Ltd. v. Blocker,* 684 F.3d 785, 793 (8th Cir. 2012). The plaintiffs have not even attempted to argue that the evidence to which they object could not be presented in an admissible form at trial, and their objections are accordingly without merit. *See Gannon Int'l,* 684 F.3d at 793.

the defendants.³ Filing 69-4; filing 69-5; filing 69-6; filing 69-7; filing 69-8; filing 69-10; filing 69-12; filing 69-22.

The plaintiffs sued on January 28, 2015. Filing 1. In February, the defendants stopped using the moniker, "The Pancake Guys," instead identifying themselves as "The Flapjack Guys." Filing 69-1 at 4. The plaintiffs have continued to pursue claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Nebraska Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. Stat. § 87-301 *et seq.*, for injunctive relief, money damages, and attorney fees. *See* filing 55. The plaintiffs move for summary judgment in their favor. Filing 65.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken

---

³ The defendants contend that the plaintiffs lost business because of poor customer service. *E.g.* filing 68 at 2. The plaintiffs characterize that argument as a "regrettable barrage of offensive language and personal invectives." Filing 72 at 19. But the plaintiffs are seeking damages based, in part, on business they say they lost to the defendants because of consumer confusion. Filing 67 at 16-17. The defendants are entitled to respond to that claim with evidence that the plaintiffs lost the business for a different reason.

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## III. DISCUSSION

The primary dispute in this case is whether the defendants' use of the "Pancake Guys" moniker infringed the plaintiffs' "The Pancake Man" mark. On the facts of this case, the plaintiffs' claim under the UDTPA is substantially coextensive with their federal mark infringement claim. *See Prime Home Care, LLC v. Pathways to Compassion, LLC*, 809 N.W.2d 751, 764 (Neb. 2012). And the parties do not contend otherwise. *See*, filing 67 at 14; filing 68 at 22-23. So, the Court considers whether the plaintiffs have proven mark infringement pursuant to the Lanham Act.

### 1. Mark Infringement

Mark infringement requires proof that the plaintiff has ownership or rights in the mark and that the defendant has used the mark in commerce, in connection with goods or services, in a manner likely to cause consumer confusion as to the source or sponsorship of the goods or services. *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011). The parties do not dispute the plaintiffs' ownership of the mark. Filing 67 at 3; filing 68 at 3. Nor do the defendants deny that their use of "The Pancake Guys" occurred in commerce, in connection with goods or services. Filing 68 at 17. The question is whether that use occurred in a manner likely to cause consumer confusion as to the source or sponsorship of the goods or services. *See Devon Park*, 634 F.3d at 1009.

### (a) Likelihood of Confusion

In evaluating a likelihood of confusion between a mark and an allegedly-infringing mark, courts consider such factors as the strength of the owner's mark, the similarity between the marks, the degree to which the allegedly-infringing service competes with the mark-owner's service, the alleged infringer's intent to confuse the public, and evidence of actual confusion. *Id.* (citing *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir. 1980)). No one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases. *Id.* The Court does not apply any mathematical formula in analyzing these factors; rather, on summary judgment, they are used as a guide to determine whether a reasonable jury could find a likelihood of confusion. *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010).

### *(i) Strength*

A strong and distinctive trademark is entitled to greater protection than a weak or commonplace one. *Frosty Treats Inc. v. Sony Computer Entm't Am. Inc.*, 426 F.3d 1001, 1008 (8th Cir. 2005). The plaintiffs contend that the mark "The Pancake Man" is strong because it has been in use for a long time, and because Kuper has received press attention and he is recognized in public as "The Pancake Man." Filing 67 at 11. The defendants, on the other hand, argue that the mark is weak because it is merely descriptive. Filing 68 at 15. The summary judgment evidence favors the defendants on this point.

Marks may be characterized in four categories: generic, descriptive, suggestive, or arbitrary or fanciful. *Sensient Techs.*, 613 F.3d at 763. On this spectrum, an arbitrary or fanciful mark is entitled to the highest level of protection, while a generic mark is afforded no trademark protection. *Id.* And categorization of the mark is a question of fact. *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1326 (8th Cir. 1984).

A generic mark refers to the common name or nature of an article, and is therefore not entitled to trademark protection. *Frosty Treats*, 426 F.3d at 1005. A mark is designated as generic in recognition of its role in consumer minds as the common descriptive name for a type, genus, or class of goods. *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987). A term is descriptive if it conveys an "immediate idea of the ingredients, qualities or characteristics of the goods," and is protectable only if shown to have acquired a secondary meaning. *Frosty Treats*, 426 F.3d at 1005. Then, suggestive marks—which require imagination, thought, and perception to reach a conclusion as to the nature of the goods—and arbitrary or fanciful marks, are entitled to protection regardless of whether they have acquired secondary meaning. *Id.*

The mark, "The Pancake Man," is arguably generic, and at best descriptive: the component words are in common usage, and function to describe the nature of the services provided. *See Gen. Mills*, 824 F.2d at 625. To prevail, therefore, the plaintiffs must demonstrate that the mark has acquired a secondary meaning. "Secondary meaning is an association formed in the minds of consumers between the mark and the source or origin of the product." *Frosty Treats*, 426 F.3d at 1005. To establish secondary meaning, the plaintiffs must show that "The Pancake Man" serves to identify their services and distinguish them from those of others. *Id.* Secondary meaning does not require the consumer to identify a source by name but does require that the public recognize the mark and associate it with a single source. *Id.*

Direct evidence, such as consumer testimony or surveys, is most probative of secondary meaning, but it can also be proven by circumstantial evidence of such factors as the exclusivity, length and manner of use of the

- 5 -

mark; the amount and manner of advertising; the amount of sales and number of customers; the plaintiff's established place in the market; and the existence of intentional copying. *Id.* at 1005-06. And the plaintiffs' evidence is relevant to these factors. But it does not establish as a matter of law that the mark has been promoted to the extent that would be effective in having the public recognize it and equate it with a single source. *See id.* at 1006.

### *(ii) Similarity*

The plaintiffs point out that in its order on their motion for a temporary restraining order (filing 12), the Court found that the similarity between the marks was "apparent." Filing 12 at 6. But that was then, and this is now. Then, the Court also said it "lack[ed] the information to delve more deeply into the similarity analysis." Filing 12 at 6. Now, more information is available.

Rather than consider the similarities between the component parts of the marks, the Court must evaluate the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products. *Sensient Techs.*, 613 F.3d at 764. The use of identical, even dominant, words in common does not automatically mean that two marks are similar. *Id.* Rather, in analyzing the similarities of sight, sound, and meaning between two marks, a court must look to the overall impression created by the marks and not merely compare individual features. *Gen. Mills*, 824 F.2d at 627. The use of identical dominant words does not automatically equate to similarity between marks. *Sensient Techs.*, 613 F.3d at 765.

The primary similarity between the marks is obviously the word "pancake." But that is generally descriptive of food and would not be registerable as a trademark. *See Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999). And in some instances, a mark's components are so widely used that the public can easily distinguish slight differences in the marks, even if the goods are related. *Gen. Mills*, 824 F.2d at 626. This may be such a case: after all, consumers are surely not under the impression that there is only one man in the world who makes pancakes, nor are they likely to be under the impression that there is only one man in the world who *caters* pancakes. And there are only so many ways to describe such a service.

But despite these mitigating facts, "The Pancake Man" *is* similar to the "Pancake Guys." So, this factor weighs in favor of the plaintiffs.

### *(iii) Competition*

The parties directly compete in the same business, and the defendants do not argue otherwise. *See* filing 68 at 17. Accordingly, this factor also weighs in favor of the plaintiffs. *See Sensient Techs.*, 613 F.3d at 766.

### *(iv) Intent to Confuse*

While proof of bad intent is not required for success in an infringement or unfair competition claim, the absence of such intent is a factor to be considered. *Id.* The plaintiffs argue that the defendants' intent to confuse can be inferred from Reid's attempt to purchase Kuper's business, and subsequent use of the similar "The Pancake Guys" name. Filing 67 at 11-12. They also point to the defendants' continued use of "The Pancake Guys" moniker even when cautioned by the plaintiffs that the plaintiffs believed the name to be infringing. Filing 67 at 12-13.

But the defendants point out that they expressly advertised their service as a preferable alternative to "The Pancake Man," meaning that there could be no confusion. Filing 68 at 17. And knowledge of another's product and an intent to compete with that product is *not* equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion. *Sensient Techs.*, 613 F.3d at 766. The defendants also point to the similarity between "The Pancake Guys" name and their previous lines of business, "The Pizza Pie Guys" and "The Grill Guys," indicating that those names, and not an intent to confuse the public, explains their initial choice of "The Pancake Guys." Filing 68 at 18.

From the evidence presented, a factfinder could conclude that the defendants did not intend to confuse anyone—rather, that the defendants' choice of "The Pancake Guys" was meant to describe their services in a way that was consistent with their preexisting brand, and identify their new line of business as providing services similar to those of "The Pancake Man," but with certain advantages that they presented in their advertising. This factor is at best neutral for the plaintiffs, and weighs against summary judgment.

### *(v) Evidence of Actual Confusion*

W]hen determining whether there exists a likelihood of confusion, weight is given to the number and extent of instances of actual confusion. *Frosty Treats*, 426 F.3d at 1009. The plaintiffs rather summarily assert that their evidence "demonstrate[s] that organizations hiring the Pancake Guys were confused, acting in belief they actually engaged the Pancake Man, and stating so in their advertising." Filing 67 at 14.

Confusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion

- 7 -

presents a significant risk to the sales, goodwill, or reputation of the trademark owner. *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 466 F.3d 630, 634 (8th Cir. 2006). And the parties agree that the relevant consumers are, in this case, the event organizers who retain the plaintiffs' and defendants' respective services. Filing 68 at 12; filing 72 at 17.

But the defendants have presented specific evidence with respect to many if not most of the customers upon whose purported confusion the plaintiffs' argument depends, and that evidence suggests that those customers were not confused at all. In evaluating instances of actual confusion, the Court looks to whether an appreciable number of ordinary purchasers are likely to be so misled. *Duluth News-Tribune, a Div. of Nw. Publications, Inc. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1099 (8th Cir. 1996). The defendants' evidence suggests that they are not.[4]

### (b) Weighing the Factors

Under the Lanham Act, likelihood of confusion is a fact-intensive inquiry. *Mid-State Aftermarket*, 466 F.3d at 634. On the evidence presented, the Court cannot conclude that the plaintiffs have proven a likelihood of confusion as a matter of law. The trier of fact could find that the plaintiffs' mark is merely descriptive and has not acquired a secondary meaning. The trier of fact could also find that although the parties compete directly and provide similar services, their names were sufficiently distinct to allow an ordinary purchaser to distinguish between them. It is at best ambiguous whether the defendants intended their name to infringe on plaintiffs' goodwill. And any evidence of actual confusion is de minimis and insufficient to support judgment as a matter of law. See *Duluth News-Tribune*, 84 F.3d at 1099.

Accordingly, the Court finds that the plaintiffs are not entitled to summary judgment on their mark infringement claim.

### 2. DOMAIN NAME INFRINGEMENT

The plaintiffs claim that the defendants "are also liable under 15 U.S.C. § 1114(d), for their bad faith intent to profit from Plaintiffs' mark shown by their traffic in and use of a confusingly similar mark in their domain name." Filing 67 at 14. They point to the fact that the defendants had

---

[4] The plaintiffs point out that actual confusion is not essential to a finding of mark infringement, which is true. Filing 72 at 17; *see SquirtCo.*, 628 F.2d at 1091. They also contend that when *identical* marks are used in the same area for the same services, a likelihood of confusion is presumed. Filing 72 at 17-18. That is also true. *Devon Park*, 634 F.3d at 1010. But of course, "The Pancake Man" and "The Pancake Guys" aren't "identical."

promoted their business on a web page with the URL, "http://www.thepizzapieguys.com/thepancakeguys." Filing 67 at 14.

But there is no "15 U.S.C. § 1114(d)"; it appears that the plaintiffs intended to refer to either 15 U.S.C. § 1114(2)(D) or 15 U.S.C. § 1125(d), both of which relate to domain names. (Probably the latter.) But neither section supports the plaintiffs' argument, for a simple reason: as the defendants point out, in the URL identified by the plaintiffs, "thepancakeguys" is not part of the domain name. *See* filing 68 at 22-23.

A "domain name" is an alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet. 15 U.S.C. § 1127. In other words, not everything in a URL is part of the domain name. In this instance, "thepancakeguys" was part of the path that followed the domain name, which was "thepizzapieguys.com." *See Bros. of Wheel M.C. Executive Council, Inc. v. Mollohan*, 909 F. Supp. 2d 506, 540 (S.D. W.Va. 2012), *aff'd sub nom. Bros. of the Wheel M.C. Executive Council, Inc. v. Mollohan*, 609 F. App'x 149 (4th Cir. 2015); *cf. GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712, 724–25 (N.D. Tex. 2010). The plaintiffs have no evidence of an infringing domain name.

### 3. MOOTNESS

The plaintiffs also contend that the defendants' defense of mootness "fails as a matter of law" because, they say, "a defendant may not moot a claim for injunctive relief simply by ceasing the unlawful conduct" and because the plaintiffs are also seeking damages. Filing 67 at 15. They ask for summary judgment as to that defense. Filing 67 at 15.

But the defendants' claim of mootness remains pertinent precisely because the plaintiffs are seeking injunctive relief. To obtain a permanent injunction, a plaintiff must show (1) its actual success on the merits; (2) that it faces irreparable harm; (3) that the harm to it outweighs any possible harm to others; and (4) that an injunction serves the public interest. *Devon Park,* 634 F.3d at 1012. In other words, even if infringing conduct is proved, the Court must consider whether the plaintiffs face ongoing harm in determining whether injunctive relief is necessary.

Mootness is obviously relevant to the plaintiffs' claim for injunctive relief. The plaintiffs are not entitled to summary judgment on the issue.

### IV. CONCLUSION

In sum, the Court finds that the plaintiffs' evidence does not establish a likelihood of confusion as a matter of law, that the plaintiffs have no evidence of an infringing domain name, and that the defendants are entitled to argue

that at least some of the plaintiffs' requested relief is moot. The Court will deny the plaintiffs' motion for summary judgment

IT IS ORDERED:

1. The plaintiffs' motion for summary judgment (filing 65) is denied.

2. On or before August 8, 2016, counsel for the parties shall contact the Magistrate Judge's chambers to set a status conference to discuss case progression.

Dated this 1st day of August, 2016.

BY THE COURT:

*[signature]*

John M. Gerrard
United States District Judge